And we will move on to our final argument for this morning, Peterson v. Best, case number 24-354. Let's move on to our final argument for this morning, Peterson v. Best, case number 24-354. May it please the Court, Rydell Peterson, on behalf of the Appellant Randolph Peterson, and you are correct, Your Honor, Peterson Jr., Randolph Peterson is my father, which... So we're here, I mean, you're here, this is your job, but I'm here because of an error I made. And hopefully it's a harmless error, but that error was counseling my father that he did not... He didn't need the expert. Right, Your Honor, absolutely. So the question is, I mean, you know, you've argued that you don't need an expert.  And I guess the question is, why would that be? Because this is a, I mean, this is a QTAM law. Your best argument seems to be, look, this has nothing really to do with QTAM. This is really about the duty to investigate. And everyone should know what an attorney's duty to investigate is. I think that's... You're absolutely right. And one of the key elements of a QTAM claim or case is the actual receipt of federal funds. And there was none. And the attorneys that were representing my father at the time, I mean, originally it was one, and it was one for ten months. And that is the defendant that currently remains in this action. He was the QTAM specialist, the QTAM guru. I mean, he held himself out as that. And it wasn't my father that went to him. It was one of my father's other lawyers that brought my father to this QTAM expert. Did your father ever, I mean, did Randolph Peterson ever discuss with Mr. Best the case? Because I thought there was some indication that part of the confusion here was that Mr. Peterson had represented that they were receiving federal funds. Well, his sole belief is that he thought that there was federal funds included in a state of Washington grant. So there was some commingling.  And that was it. Right. And so the attorney relies on that. And, I mean, maybe that was deficient, maybe it wasn't. I guess the question is, and this kind of brings me back to my first question to you, because on the one hand, you could phrase this as, look, this is just a question about your duty to investigate. But it seems like you can't separate that from the QTAM, because I would imagine that whether they're receiving federal funds is not as easy as it might seem, as this case apparently shows. Well, I think I have to disagree. I mean, they either got them or they didn't. And in this case, they didn't. And that was clearly pointed out by Judge Rice in 2019. And he eviscerated us for having brought this claim. And a QTAM claim, as your Honors will— How would he have gone about investigating it? I mean, I guess there's a—I mean, sometimes you have to operate on information and belief, and then when you get into the litigation, the facts might turn out a certain way. Request—FOIA requests? The Port of Benton is a public agency. They had—they were obligated to produce documents. I mean, that's just one example. Depositions, discovery. Right, but depositions and discovery obviously happens after you've already filed the complaint. And I guess this brings me to my other question, which is Mr. Best, as I understand it, and maybe you can shed light on this, comes forward a couple of weeks, I guess, before the final judgment and says, look, you should voluntarily dismiss this because there is a fee-shifting statute. I assume that that's because Mr. Best started to realize there's probably a problem here. The facts don't match up with what we thought they were. Obviously, if Mr. Peterson had taken that advice, he would have avoided the fee-shifting if it had been dismissed based on that advice. And that's his claim, and there's no evidence of that. There was one single text message when Mr. Best was on the way out the door that said— and this was after the Port of Benton had filed summary judgment and a whole new set of attorneys had come in to represent my father and his company. Hey, maybe you should look at it, not you should or, hey, there is a fee-shifting arrangement. You might want to consider whether— Yeah, like heavily consider it. And so, I mean, he was— So I'm a late-to-life lawyer. I've been—this is my sixth year of practicing. And to me, it was an abomination to watch what took place. And so to me, this is about being accountable for a failure. And I was raised to own up to that. You screw up, hey, I screw it up, whether you're a lawyer or a plumber or whatever. Just acknowledge it. And there was zero acknowledgement. I mean, the other four firms and attorneys, you know, the settlement agreements are confidential, so I can't get into what they say, but they settled out. Mr. Best did not. And Mr. Best, to me, is the primary culprit. He was the originator of the claims. He was the one that whatever Randolph Peterson said to him about the funds, that was where his source came from. Is that right? The best knowledge—Best did not investigate further, but his knowledge came from what Randolph Peterson told him. And one of his other attorneys, William Schroeder, he was a business attorney for my dad's company. And it was Schroeder's that introduced my dad to Best. Okay, so I just want to be clear here because I thought I had the sequence right. This Schroeder, was he also a representative on this case? He chose not to become an attorney of record for whatever reason. So in one sense, he was antecedent but not as an attorney of record. Correct. Is that fair? Yes. Okay. And then all of these other attorneys are subsequent to Best's representation. Yes, absolutely. And that was what— Absolutely. And so, Your Honors, no, just a quick point. On a QITAM claim, an individual non-attorney can't bring it. It has to be an attorney because you're essentially representing the United States of America. And so, to me, that just adds that much more credibility or that much more weight for the attorney's role in a QITAM claim. But it also triggers the general rule that you have to have an expert. I mean, the only way you don't have to have an expert is if this is just so common knowledge that anyone would know. And I just—I mean, what are cases you can point us to to suggest that an action like this is so common knowledge that it fits within the exception under Washington law? The only cases that I've seen reference is statute of limitations. So if you miss a statute of limitations that's within the common knowledge of a layperson, yeah, hey, that's malpractice. But when I looked at this initially in looking at Judge Rice's order from 2019, one of the key elements is the receipt of federal funds. And so if you can't prove that or show that, then to me, then that would mean you have no claim. You have no merit. And so it should have been withdrawn or it should have—at a minimum, a poster should have been delivered to my dad from the lawyers and said, this is no bueno. This has no merit. You're going to lose. And when you lose, you're going to owe the other side's attorney fees. But the operative language is not sort of about the common knowledge is—I take it those cases say common knowledge is there are statutes of limitations. You have to know when to sue. Here it's—this is a lawsuit. There are many elements involved in it. One of them is very important, but frequently there are ways around them. Is that within the common knowledge of the jurors in Seattle or in Frenchtown, Montana? I think given the opportunity in explaining the four elements and knowing that if one does not exist, then there is no basis for the claim, I think that would fall within the common knowledge or the wherewithal of a layperson to understand. Although having to explain it kind of takes it out of common knowledge, doesn't it? You still would have to—and not to quibble, but you'd have to explain a statute of limitations to a layperson as well. And here nor there in a way because I—if it is harmful, if I made the error and an expert should have been named, then okay. Then we get to the sanctions for having not named one. And the underlying court— Well, but below—let me back up because when this was kind of came to light, they file an expert report, and then it seems like that sort of jogged you to say, oh, wow, maybe we should have done the same thing. You didn't come in and ask for leave or ask for an excuse to file a late expert report. You kind of said this is a rebuttal expert. That's the decision you make in the district court. So why doesn't that resolve—I mean, assuming that an expert was needed, how do you then get around it? Because you didn't make the argument below that you should have been excused. So how do you—haven't you forfeited that argument? Well, I never had the opportunity to. Of course you did. The opportunity would have been yours to come in and say, hey, we missed the deadline. Here's the justification for why we missed it. But you never did that. Because I didn't believe we needed one. And the expert that we named truly was a rebuttal expert. It's kind of going around in a circle because the burden was on you, correct, initially? To provide the expert? Right. To prove the case. Yes. Okay. So you have the burden to prove the case. In your mind, you didn't need an expert. But in fact, all the Washington law, when you talk about malpractice, et cetera, they always require an expert. So after you missed the deadline, you recharacterize it as a rebuttal expert. But you could have said, and what many attorneys would have done is, we move or leave to file a late expert report or in the alternative to treat this as a rebuttal expert report. And then you would have been on the record to sort of saying, well, if it was wrong in the first place, give me some mercy. But I might be right and it's a rebuttal expert. And then the judge has these options. But the way you framed it, you have the burden, not the other side. So it's somehow you reverse things. And I think that's where you went kind of further down the rabbit hole. And I guess the question is, why didn't you just ask, if this is a late report, all I want is the court's good leave to let me file it? Because I didn't think we needed one. I honestly didn't. From reading the Washington case law and always requiring an expert report, you didn't think you needed one. That's not what it says. It's not mandatory. It is not. Pretty much is. Pretty much is. And now practice. And then that is my failure. But then to that degree, I don't. The problem is, okay, if that's a failure, then how do we excuse the failure? And I think that is Judge McHugh's line of questioning, which is there was a way to sort of fix that, but you didn't fix it below. So I guess in a way that's like a second failure. And now we're like, we're stuck with this case. But I didn't know it was a failure until we had summary judgment on December 14th. Or actually December 19th when Judge Rice entered his order dismissing the case. And the way that we get there, I mean, Judge Rice took it upon himself to say, hey, he called it dubious, and it wasn't. I truly believe we didn't need an expert. So he recast on his own accord, and there is case law that has done the same thing, the Holand v. Jovik case. But he recast the rebuttal expert as an initial expert. And I thank him for doing that. But then he decided that there was no good reason for the late disclosure. And in doing so, he needed – I mean, the reason for the late disclosure, as much as I'm gathering, is you just didn't think you needed one. Absolutely. But that was – you rolled the dice wrong on that one from a legal standpoint, according to the judge. Yes, but then the – Judge Rice was supposed to determine whether or not it was either harmless error or – I mean, it's – And I understand the harmless error argument, but if I look at the Washington law, for example, under Yeti, the burden's on you to show that it's harmless, not the judge doing it sua sponte. You're absolutely right. But I didn't have – we didn't have the opportunity to show that it was harmless error. We didn't get to that point. Judge Rice never said, hey, I'm going to exclude this unless you can show me that it was harmless error. And did you come back after the ruling and say, this is harmless error? No, I appealed to the Ninth Circuit. I know, but there's always – you know, attorneys always say, yeah, the judges never change their mind, but that's not true. Usually after you lose, say, on a summary judgment or whatever, you say – The motion for reconsideration? Your Honor, with all due respect, motion for reconsideration under Rule 37. And I read that, and they're highly disfavored, and I didn't want to – Well, you couldn't tick him off anymore. He already ruled against you, right? So what's the harm of saying, you know, stop the train? We just need to explain why this is harmless in this case because everybody now has the reports. They can analyze them, and then we can go forward. Yeah, and I thought that – I mean, I guess I should have done that, absolutely. It's another learning experience. But in the dismissal, it also didn't get to the other – the Malone – there's actual factors that were supposed to be followed in dismissing the case, and we didn't even get there. We didn't even have the opportunity to address those. And at the end of the Malone case, which is another failure on my part for not emphasizing it to your honors, it specifically says – and I'm not going to have the exact right cite, but it's under Head Note 9 – the district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of a less drastic sanction. That is the law. So my time is – Yeah, we'll give you some time for – Okay. Thank you, your honors. Thank you, your honors, for hearing this case. May it please the court, I'm Mark Louvier from Evidence, Craven & Lackey in Spokane. I'm here representing defendant in the underlying action, Ryan Best, and his law firm, Best Law, PLC. Two things before we dive into the more salient, robust issues, factual issues that were brought up in Appellant's argument. Number one, with regard to evidence of the complexity of these claims and where Mr. Best learned of the complexity of those claims is his client. There is actual evidence of that that is in the record. If you look at SER 115, that is where the declaration of Ryan Best begins. Mr. Best outlines the formation of his relationship with his client. He also outlines the superior knowledge of his client being in the industry, the railroad industry, for some period of time. And Mr. Best explains his adopted belief that there may be some fraud being perpetuated by the defendant entity in the underlying action. So is your position basically, you know, yes, there clearly is investigation that's required, but dissatisfied investigation, because who better to go to than somebody who, you know, knows about the industry and tells me this? Precisely, and better yet, Your Honor, what Mr. Best did is he filed a key TAM lawsuit which automatically turns this case over to the United States government, the U.S. Attorney's Office, which we've included this in the… The U.S. Attorney's, I mean, it went on for four years. Didn't the U.S. Attorney's Office finally come forward and say, I mean, they allowed this to go forward, right? Correct. Which is really bizarre, because if anyone has knowledge about whether they were receiving federal funds, it's the U.S. Attorney's Office. Correct, which, two points. How did they do that? Number one, it lends to the complexity of this case to begin with, but number two, with the U.S. Attorney's Office, my understanding is they essentially have three options. They can say, we've looked into this, we've conducted our investigation, this is frivolous, this is meritless, you are going to dismiss it or we are going to dismiss it. Or they can say, gosh, this is a matter that is better handled by our office, we're going to take it over, you step aside, thank you, whistleblower, for informing us of this, but we're taking the lead seat now. The third option they have is what they did in this case, which is sort of a middle ground. We are going to continue to monitor this case. We're not taking a position as to whether it has merit or not. We're not going to dismiss it. We're not going to take it over. Is there any evidence in the record as to why they would have thought that there was federal funding? No. In fact, Your Honor, what they did is the U.S. Attorney's Office, and this I believe is in the court record, I don't have a site offhand, but what they did is they filed a pleading notifying all of the parties of their position and demanding that the parties keep them informed as to the status of the litigation, which gave them the option to intervene later or take some additional action later, should they deem that to be appropriate. And that's actually from the studies of ketamine. That's what typically happens. Correct. Is that there are a lot of ketamine actions filed, and the government often just says hands off. That then changes the recovery formula, as I understand it. It does. But it doesn't change the underlying question of is there government fraud or fraud against the government. That is correct. And so in this case, Mr. Best explained in his declaration that he viewed the U.S. Attorney's Office as being in a superior position and will go into the complexity of the claims and the numerous lawyers that were involved later. And I guess the whole point is that may have been right, that may have been wrong, but you need an expert to say that. This is different than, hey, I got hit by somebody else in a parking lot and you've got to go out and look and make sure that the car actually has damage. I mean, this is more complicated than that. Correct. And so ultimately you have those two factors in terms of the investigation. You have an individual, Mr. Best, the lawyer, who is relying upon the superior expertise of his client in this circumstance, and you have the extra layer of protection, which is the U.S. Attorney's Office. Can you walk through at least what's in the record? I know there might be a dispute. It sounds like there is about what happened with this conversation, apparently a couple weeks before it was ultimately dismissed, where Mr. Best said, hey, maybe you should think about avoiding fee shifting by dismissing the case. Yes, Your Honor, and that is found at SER 115. That's also in the declaration. That is correct. Mr. Best explains the conversation that he had with Mr. Peterson, the litigant, as opposed to the lawyer, although I think both were involved in those discussions because Mr. Rydell Peterson, who is present today, was a member of the bar towards the latter phases of the litigation. And before I get too far down this road, one additional factual correction. Judge Boggs, you had asked about the representation of the parties at different points in time, and I think there is one notable correction to what counsel told you. Mr. Best is the attorney that initially filed the lawsuit. The U.S. Attorney's Office did investigate for a period of time, and then a slew of lawyers came in to handle this claim due to the complexity of it and conduct that initial discovery. The other slight correction that I would make to that is the panel asked about Mr. Schroeder. Mr. Schroeder's firm was involved. Mr. Schroeder personally may not have been involved. He was the business attorney for Mr. Randolph Peterson's corporation. Other partners at the firm? His firm remained involved. Overall, I think there were four law firms. The last correction in terms of the sequence of events, there was one additional law firm on the back end, after all of those law firms withdrew, who filed the fourth amended complaint, which was ultimately dismissed, and that's when Judge Rice imposed attorney's fees as a sanction against Mr. Peterson. And so at the end of the day, factually, what occurred is after Mr. Best had already withdrawn from the litigation, Mr. Peterson doubled down and filed yet another complaint, persisted in pursuing these allegations that Mr. Best told him did not have merit. And so I think it's an important factual clarification in terms of the chronology. One argument I do want to address is Judge Rice's initial order and with regard to whether he considered the testimony of Judge Harold Clark, retired, who was the proffered expert. We use the term strike in litigation erroneously. I'm guilty of it. I know a lot of trial lawyers are. And when we say strike, sometimes we mean strike from the record or exclude. There are a variety of circumstances or ways in which that term is thrown around. In this case, what Judge Rice meant when he said in the body of his order that he is striking the expert is he's not going to consider the expert in connection with the summary judgment motion. Judge McEwen, you pointed out that the distinction between rebuttal experts and primary experts, and that's something I'd like to focus on for just a moment, because it is undisputed on this appeal that Judge Clark was listed as a rebuttal expert in this case. That is how they've phrased it in their legal briefing. That is how the disclosure looks in the materials that you were provided. That's important because Judge Rice is not obliged, Sue Esponte in particular, to take. Reformulate the case for them. Exactly. He does not have to do that. And there is actually one case that is from a district court in Idaho called Ellis v. Corazon, it's C-O-R-I-Z-O-N, Incorporated, in which the court specifically deals with that issue. Does a trial court in a summary judgment proceeding have a duty to the nonmoving party to take the rebuttal testimony, rebrand it, and say, okay, we got over the hump. The plaintiff, you've satisfied your burden on summary judgment. Ellis says no. It cites two extra circuit cases that are not binding on this court, but I think the reasoning is sound and it's appropriate under these circumstances. So to say that Judge Rice was required to evaluate the prejudice versus the, I believe they use the term substantial justification. What about the sanctioned Malone factors? I hadn't focused on that so much. Is there an issue here where exclusion of the expert, which is basically what that was, was tantamount to dismissal and so, therefore, the Malone factors needed to be considered? Two things there. Number one, and I was getting to this just a moment ago, but I lost my train of thought candidly. What the judge's order did is he said, I'm not going to consider this expert in connection with the summary judgment motion, but he denied a motion to strike that we filed. We sought to exclude Judge Clark entirely as a witness, but ultimately at the end of the order, what he says is he's denying the motion to strike Judge Clark as moot. So he's leaving for a later day whether Judge Clark could testify as a expert witness from a rebuttal perspective. However, in footnote two of his order, he does describe and explains that this is rebuttal testimony because the declaration or the. It responds to the initial report. That is correct, Your Honor. It kind of begs the Malone question because was there something less drastic? Because the reality of excluding the testimony here or not considering it in conjunction with the summary judgment is that Peterson loses. The case is dismissed. So that's a kind of final judgment there. And would there have been or should he have considered a less drastic sanction? Because what he basically says, I'm not going to consider it here. So I don't even have the fine judge's argument to consider. And the result is you lose. So that's pretty drastic. It's an interesting question in two points that I think bear some discussion. Number one, the Malone factors were never raised at the trial court level. The plaintiffs never asked Judge Rice to consider those factors. There was, as I said, a motion to strike. And they never asked for a less drastic remedy. You're exactly right, Your Honor. The other component of that is when you're construing testimony as a rebuttal testimony, I would argue that's not a discovery sanction. You're taking the plaintiff's word for what they've disclosed. They have advised that they are offering this expert witness as a rebuttal expert witness. And so you're not saying they violated any rule. You're saying you're stuck with what your disclosure is. You've decided that after the plaintiff's case-in-chief is completed, after the defense case-in-chief has been completed, that's when your witness could arguably go on the stand and testify if, of course, that's true rebuttal. And so I think that's why we pass through the Malone factors is because it's not just was this- I mean, your argument on the Malone is basically twofold. Number one, Malone isn't triggered. Correct. Number two, even if it was, it wasn't raised, so it's waived. But you really- if we were to say, look, Malone is an obligation of the district court and it did apply here, you don't really have an argument. I mean, you agree that he didn't consider the Malone factors. Correct. Then I would fall back to the position that I've articulated concerning rebuttal testimony and say, pursuant to Ellis and the cases that are cited in Ellis, the court has no obligation to move that testimony over and call it primary testimony in support of the case-in-chief. Judge Rice, I will note, concerning that rebuttal issue, footnote two, it's buried in the order. Oftentimes when we get to appellate courts, the orders are imperfect, and so we have to go back and say what was actually done here. Footnote number two does recognize and does explicitly quote cases in which it says- it notes the distinction between rebuttal and primary testimony and whether or not rebuttal testimony can go on to satisfy the plaintiff's burden of proof in a case where they are the non-moving party. One other item that came up in the briefs, and I just wanted to address it, but there was some argument in the briefing about interrogatories that were outstanding in advance of the summary judgment proceedings that had not been answered by Mr. Best. It's an issue that was touched upon, but I would note that, pursuant to Federal Rule 56D, sub D, it is the plaintiff's obligation to come forward and say, hold on, Judge, put on the brakes. I don't have enough data to respond to this summary judgment motion, or this is the improper time to do so until we gather more information. That was not done in this case, and so there's nothing- inasmuch as there's outstanding discovery, frankly, there's always outstanding discovery, but the obligation of the non-moving party in that circumstance is to either A, request relief from the court, and B, as a next step, say this is the outstanding discovery, and here's why it would make a difference in the circumstance. We need to bump the hearing or have resolution of this issue at a later date. With that, I appreciate the time. Unless the court has any other questions, that's all I have for you today. Thank you. Thank you. I'll give you two minutes for rebuttal. So just real quick, it wasn't the complexity of the QI-TAM issue as to why a whole slew of lawyers came on board, as defense counsel had said. It was because my dad's company came in, and 13 new claims came in with my dad's company. So there was an attorney specifically for civil rights violations, an attorney specifically for breach of contract issues, so it wasn't about the QI-TAM. The QI-TAM could have stood on its own with my dad as the sole plaintiff. The Malone factors were absolutely addressed. They were addressed in response to their motion to strike our expert witness. The Malone factors were addressed. The Holzen case was addressed. I didn't put those forth as part of the appellate record because in reading the Ninth Circuit appellate guide, it said not to put forth actual arguments. That was not frowned upon, but we weren't really supposed to do that. But Malone was addressed and Holzen was addressed, and it was very much outlined. But as defense counsel had said, Judge Rice didn't get to it, didn't get to that motion. He denied the motion to strike his moot because he had already made the decision to exclude the expert. But what Judge Rice did in his order, he did recast the rebuttal expert as an initial expert. He did that. He wasn't obligated to do it. He did do that within his own order. He did that. And based on that, he then determined the disclosure was not timely. But having done that, and they didn't bring it up on appeal. I don't think he, well, I'm not sure that that is what we mean by that he recast it. He did. I can read it. He said, I see. So he said if this is an initial expert, then you're just on time. Yes, absolutely, and there was no good reason. But to get to that, that's where there was a failure on the part of the court for not dealing with the harmless error or if it was justified. And then to the court's question on the Malone factors, I mean, there was absolutely a less harsh sanction. I mean, no expert, case is gone. And that's what happened. But I think that the court skipped some steps. What would be the less harsh sanction here? Pay them money for having to have brought to motion. Don't do that again, idiot. Or I'm just saying, I mean, a reprimand. Or not excluding it and allowing him potentially to still testify, but just excluding it from the summary judgment. Which it would have then still come to this. Not a lot less drastic. Not a lot less drastic. But I think that there could have been something. There was something less drastic than dismissing the case over my failure. And to me, that's what this case is about. And it was brought for that reason. Not one time did Ryan Best say, hey, I screwed up, or hey, I apologize, or hey, anything. But, oh, at least I didn't have to pay the $102,000. Okay. Well, thank you. Thank you to both counsel for your arguments in the case. That concludes. This case is now submitted, and that concludes the arguments for this morning. Thank you.
judges: Boggs, McKEOWN, NELSON